IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES KELLAM and
PHYLLIS KELLAM
and all other persons and
entities similarly situated,

        Plaintiffs,

v.

CHESAPEAKE APPALACHIA, LLC,
SWN PRODUCTION COMPANY and
EQUINOR USA ONSHORE PROPERTIES, INC.

        Defendants.

CASE NO. 5:20-CV-85

Judge: John P. Bailey

ELECTRONICALLY FILED
Apr 28 2020
U.S. DISTRICT COURT
Northern District of WV

## CLASS ACTION COMPLAINT

Now come the Plaintiffs, who for their Complaint against the Defendants, Chesapeake Appalachia, LLC, SWN Production Company, LLC and Equinor USA Onshore Properties, Inc., state as follows:

1.    Named Plaintiffs Charles Kellam and Phyllis Kellam are husband and wife and have at all times material and relevant herein been residents of Ohio County, West Virginia and are the owners of oil and gas mineral interests located in Ohio County, West Virginia.

2.    Upon information and belief, the Defendant, SWN Production Company, LLC ("SWN"), is and has been at all times material and relevant herein, a for profit corporation organized and existing under the laws of the State of Delaware with its principle place of business in Spring, Harris County, Texas.

3.    Upon information and belief, the Defendant, Equinor USA Onshore Properties, Inc. ("Equinor"), is and has been at all times material and relevant herein, a for profit corporation

1

organized and existing under the laws of the State of Delaware with its principle place of business in Houston, Texas.

4. Upon information and belief, the Defendant Chesapeake Appalachia, LLC, (CHK) is and has been at all times material and relevant herein, a for profit corporation organized and existing under the laws of the State of Oklahoma with its principle place of business in Oklahoma City, Oklahoma.

5. Plaintiffs Charles Kellam and Phyllis Kellam executed an oil and gas lease agreement (the "Kellam Lease") with Great Lakes Energy Partners, LLC in August 2007. The Memorandum of Lease for such agreement was recorded in the records of the County Commission of Ohio County, West Virginia at Deed Book 780, Page 154 on or about October 10, 2007. A copy of the Kellam Lease is attached hereto as Exhibit A.

6. The full form of the oil and gas leases include the following or similar language:

> 4. In consideration of the premises the Lessee covenants and agrees:
>
> (A) To deliver to the credit of the Lessor in tanks or pipelines, as royalty, free of cost, one-eighth (1/8) of all oil produced and saved from the premises, or at Lessee's option to pay Lessor the market price for such one-eighth (1/8) royalty oil at the published rate for oil of like grade and gravity prevailing on the dates such oil is sold into tanks or pipelines. Payment of royalty for oil marketed during any calendar month to be on or about the 60th day after receipt of such funds by the lessee.
>
> (B) To pay to the Lessor, as royalty for the oil, gas, and/or coalbed methane gas marketed and used off the premises and produced from each well drilled thereon, the sum of one-eighth (1/8) of the price paid to Lessee per thousand cubic feet of such oil, gas, and/or coalbed methane gas so marketed and used, measured in accordance with Boyle's Law for the measurement of gas at varying pressures, on the basis of 10 degrees Fahrenheit, without allowance for temperature and barometric variations less any charges for transportation, dehydration and compression paid by Lessee to deliver the oi, gas, and/or/or coalbed methane gas for sale. Payment for royalty for oil, gas, and/or coalbed methane gas marketed during any calendar moth to be on or about the 60th day after receipt of such funds by the Lessee.

7. Upon information and belief, Defendant CHK obtained an assignment of the Kellam Lease from Great Lakes Energy Partners, LLC, and, thereafter, entered into activities to create and operate oil and gas wells and production units within which the Kellam property is and has been included.

8. Upon information and belief, Defendant Equinor, previously knowns as Statoil USA Onshore Properties, Inc., acquired a portion of the working interest in the Kellam lease from Defendant CHK.

9. Upon information and belief, Defendant SWN acquired an assignment of the Kellam Lease working interests held by Defendant CHK and Defendant Equinor and has continued to operate oil and gas wells and production units within which the Kellam property is and has been included.

10. Defendants CHK, Equinor and SWN have all engaged in oil and gas production efforts under the authority of the subject agreement and each have deducted post-production costs from royalty checks due and payable to Charles Kellam and Phyllis Kellam and other similarly situated persons and/or entities.

11. In Davis v. Hardman, 148 W.Va. 82 (1963) the West Virginia Supreme Court determined that "a distinguishing characteristic of [the landowner's royalty] is that it is not chargeable with any of the costs of discovery and production." West Virginia law has held that "unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the production the point of sale." Wellman v. Energy Resources, Inc., 210 W.Va. 200, at Sly Pt. 4 (2001).

12. "If an oil and gas lease provides that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, the lessee shall be entitled to credit for those

costs to the extent that they were actually incurred and they were reasonable. Before being entitled to such credit, however, <u>the lessee must prove, by evidence of the type normally developed in legal proceedings requiring an accounting, that he, the lessee, actually incurred such costs and that they were reasonable</u>." <u>Wellman v. Energy Resources, Inc.</u>, 210 W.Va. 200, at Sly Pt. 5 (Emphasis added).

13. <u>Estate of Tawney v. Columbia Natural Res., L.L.C.</u>, 219 W. Va. 266, 272, 633 S.E.2d 22, 28 (2006) provides that: "[l]anguage in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of sale must expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty . . . and <u>indicate the method of calculating the amount to be deducted from the royalty for such post-production costs</u>." (Emphasis added.)

14. Defendants CHK, Equinor and SWN owed duties and had responsibilities under West Virginia law to comply with the terms and/or conditions, including but not limited to implied terms and/or conditions, of their lease agreements.

15. The Kellam lease lacks any specific method of calculating the amount of alleged post-production costs to be deducted directly from the Lessor's share of production and, at best, creates ambiguity in the language of the lease agreement itself.

16. There is no proof that any of the actual costs deducted by any of the Defendants have been actually incurred or that they are or were reasonable in any way. The burden is on the lessees to prove, by evidence of the type normally developed in legal proceedings requiring an accounting, that the lessees actually incurred such costs and that they were reasonable.

17. Defendants CHK, SWN and Equinor had the responsibility to pay the Kellams, and all other similarly situated persons and/or entities, all moneys exactly due and owing to them under and pursuant to the leases above and West Virginia law.

18. Defendants CHK, SWN and Equinor were responsible to account for the oil and/or gas which was removed from Kellam property, and from the properties of all other similarly situated persons and/or entities, and to pay them all monies exactly due them.

19. Defendants CHK, SWN and Equinor were responsible to not withhold moneys from the royalties due to the Kellams and all other similarly situated persons and/or entities.

20. Despite lacking proper lease language to allow for the deduction of post-production costs from the mineral owners' royalty share, Defendant CHK, Equinor and SWN have affirmatively taken post-production costs from the mineral owners' royalty share.

21. By deducting post-production costs, Defendants CHK, Equinor and SWN have breached the Kellam lease as well as the leases of all other similarly situated persons and/or entities.

22. Through the actions outlined above, Defendants CHK, Equinor and SWN have breached the implied covenant of good faith and fair dealing inherent in the Kellam lease as well as the leases of all other similarly situated persons and/or entities.

23. Defendants CHK, Equinor and SWN wrongfully and intentionally breached their contract and duty of good faith and fair dealing with the Plaintiffs, and all other similarly situated persons and/or entities, through the retention and deduction of post-production costs from the royalty share payable to them.

24. The Plaintiffs and all other similarly situated persons and/or entities have been damaged through Defendants CHK, Equinor and SWN's breaches in that they have not received

monies that were due and owing to them and have experienced a loss of use of these monies, including but not limited to being prevented from using said monies for their own personal purposes including but not limited to the investment of those monies.

25. The Plaintiffs and all other similarly situated persons and/or entities owned mineral rights and had the right to receive full payment for their royalty interest.

26. Defendants CHK, Equinor and SWN wrongfully and intentionally kept and withheld payments, benefits and property rights rightfully due and owing the Plaintiffs and all other similarly situated persons and/or entities through the retention and deduction of post-production costs from the royalty share payable to them and, therefore, have committed illegal and improper conversion.

27. The Plaintiffs and all other similarly situated persons and/or entities have been damaged through Defendants CHK, Equinor and SWN's conversions in that they have not received monies that were due and owing to them and have experienced a loss of use of these monies, including but not limited to being prevented from using said monies for their own personal purposes including, but not limited to, the investment of those monies.

28. The relationship that existed between the Defendants and the Plaintiffs, as well as all other similarly situated individuals and/or entities, created fiduciary duties and responsibilities owed by the Defendants towards the Plaintiffs and other similarly situated individuals and/or entities.

29. Defendants CHK, Equinor and SWN's actions in deducting post-production costs when the oil and gas lease language at issue did not permit such deductions demonstrates that the Defendants failed to meet and follow their fiduciary responsibilities.

30. The Plaintiffs and all other similarly situated persons and/or entities have been proximately injured and damaged by the actions of the Defendants in failing to meet their fiduciary responsibilities.

31. Defendants intentionally misrepresented, through their lease paperwork and/or their royalty payment documents, to Plaintiffs and all other similarly situated persons and/or entities that the Defendants: (1) would provide an honest and lawful accounting; (2) were entitled to take deductions from Plaintiffs' royalty; (3) were entitled to take the amount of deductions they took; (4) had contractual authority to reduce Plaintiffs' royalty payments; (5) had contractual authority to overcharge Plaintiffs for services; and/or (6) wrongfully claimed Plaintiffs' royalty due was less than the amount actually due, thereby denying Plaintiffs and others the rents and royalties to which they were due.

32. Plaintiffs and all other similarly situated persons and/or entities justifiably relied on the Defendants' lease paperwork and/or the royalty payment documents to believe that the Defendants were providing them an honest accounting of lawful payments due and owing to them.

33. Plaintiffs were damaged as a result of Defendants' knowing and unlawful acts and omissions in continuing to take deductions from Plaintiffs' royalties, failing to pay Plaintiffs the fair value of money owed to them for gas at the point of sale and by Defendants taking this money and using it for themselves.

34. As a proximate result of the wrongful, knowing, and fraudulent acts and omissions of Defendants, Plaintiffs were damaged and are entitled to the recovery of any and all monies taken and withheld from their royalty share.

35. By deducting post-production costs, without legal authority under the lease prior to doing so, Defendants CHK, Equinor and SWN have breached the implied duty to market established in Syl Pt. 4 <u>Wellman v. Energy Resources, Inc</u>, 210 W.Va. 200 (2001).

36. By making post-production cost deductions in the absence of required lease language that: (1) expressly provides that the Plaintiffs shall bear some part of the costs incurred between the wellhead and point of sale; (2) identifies with particularity the specific deductions Defendants Equinor and SWN intended to make; and (3) indicates the method of calculating the amount to be deducted; Defendants CHK, Equinor and SWN have violated <u>Estate of Tawney v. Columbia Natural Res., L.L.C.</u>, 219 W. Va. 266, 272, 633 S.E.2d 22, 28 (2006).

37. The Plaintiffs seek a declaratory judgment that the lease language at issue in this case does not authorize the deduction of any post-production costs from the royalty share attributable to the Plaintiffs.

38. The Plaintiffs seek a declaration that any and all post-production costs deducted from the Plaintiffs' royalty were improper.

39. The Plaintiffs seek the return of any and all post-production costs deducted from the Plaintiffs' royalty share by the Defendants.

40. The Plaintiffs seek the return of any and all post-production costs that were not actually incurred or reasonable.

41. The Plaintiffs seek an order confirming that the Defendants are not entitled to deduct any future post-production costs from the Plaintiffs' royalty shares.

42. As a direct and proximate result of the conduct of the Defendants, the Plaintiffs have been forced to incur substantial costs, expenses and attorneys' fees and should be entitled to recover the same from the Defendants.

43. Defendants CHK, Equinor and SWN's intentional and willful acts as outlined above and throughout this complaint were done with actual malice and/or such a conscious disregard for the rights of other persons and/or entities that they had a great probability of causing substantial harm. The Defendants' actions were conscious wrongdoings that were deliberate and/or intentional.

44. The conduct of the Defendants as outlined above and throughout this complaint has been such that the Plaintiffs are entitled to recover punitive damages from the Defendants in order to punish the Defendants and to deter them and other individuals and/or entities from engaging in similar conduct in the future.

45. This civil action is an appropriate case to be brought and prosecuted as a class action by Plaintiffs against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure.

46. There exists a class of individuals and/or entities like Charles Kellam and Phyllis Kellam who own oil and/or gas rights in West Virginia and who have entered into leases of those rights and which defendants are the lessees or have been otherwise assigned the rights and responsibilities under and pursuant to said leases.

47. Upon information and belief, the same or substantially similar lease language used in the Kellam Lease regarding gas royalty payments was used in other lease agreements entered into between West Virginia mineral owners and Great Lakes Energy Partners, LLC.

48. Upon information and belief, Defendants CHK, Equinor and/or SWN obtained through assignment or purchase some or all the Great Lakes Energy Partners, LLC leases which would include that same or similar royalty language.

49. Upon information and belief, Defendants CHK, Equinor, SWN and/or their affiliates and/or additional assigns have deducted post-production costs from all other oil and gas

lessor royalty shares who have the same or substantially similar royalty language at issue in the subject lease.

50. Pursuant to Rule 23 of the Federal Rules of Civil Procedure the Plaintiffs bring their claims for breach of contract, breach of implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, and declaratory judgment on behalf of all individuals and/or entities who executed West Virginia lease agreements with Great Lakes Energy Partners, LLC, whose leases included the same or substantially similar royalty language, and who have had post-production costs deducted by Defendants CHK, Equinor and/or SWN from their royalty share.

51. Certification of the Plaintiffs' claims for class-wide treatment is appropriate, as the Plaintiffs can prove the elements of their claims on a class-wide basis using the same and common evidence as would be used to provide those elements in individual actions alleging the same claims.

52. Numerosity. The Plaintiffs do not know the exact number of Class members but believe the members of the Class are so numerous that joinder of all members is impracticable.

53. Commonality. Well-defined, identical legal and factual questions affect all Class members. These questions predominate over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

  a. Whether the lease language at issue contemplated or permitted the deduction of any post-production costs from the lessor's royalty share.
  b. Whether the Plaintiffs are entitled to a judgment that the deduction of post-production costs from the lessor's share in this situation was a breach of contract.
  c. Whether the Plaintiffs are entitled to judgment that the actions of the defendants in deducting post-production costs from the lessor's royalty share violated the breach of the implied covenant of good faith and fair dealing.
  d. Whether the Plaintiffs are entitled to a declaratory judgment that no post-production costs may be deducted from the lessor's royalty share at any point based on the lease language at issue in this case.

  e. Whether the Defendants committed the conversion of the Plaintiffs' property.

  f. Whether the Defendants breached the fiduciary duty that it owed to their lessors by deducting post-production costs from royalty shares when the lease language did not permit such deductions.

  g. Whether the Defendants made intentional and/or negligent misrepresentations to mineral owners about the nature of their royalty shares.

  h. Whether punitive damages are appropriate to punish and deter this conduct at issue and to deter future similar conduct.

54. **Typicality.** The Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Class members were injured through the deduction of post-production costs when the lease agreement entered into by the lessors did not permit the deduction of such alleged post-production costs under West Virginia law. The same events and conduct that gave rise to the Plaintiffs' claims are identical to those giving rise to the claims of every other Class member because each Plaintiff and Class member is a person and/or entity that has suffered harm as a result of the Defendants' deduction of post-production costs and/or the calculation of the mineral owners' royalty share.

55. **Adequacy.** Plaintiffs will fairly and adequately protect Class members' interests. Plaintiffs have no interest antagonistic to Class members' interests. Moreover, Plaintiffs have retained counsel that has considerable experience and success in prosecuting complex civil litigation, class action, and mineral rights claims.

56. **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating the claims of Plaintiffs and the Class members. Plaintiffs and the Class members have been harmed by the Defendants' wrongful actions. Litigating this case as a class action will reduce the possibility of repetitious litigation, inconsistent or varying adjudications, and/or incompatible standards of conduct for the parties opposing the class. Moreover, the

Defendants have acted on grounds generally applicable to the class, thereby making final declaratory relief appropriate with respect to the class as a whole.

57. A class action is an appropriate method for the fair and efficient adjudication of this controversy. There is not a special interest in the members of the Class individually controlling the prosecution of separate actions. Class treatment will permit a large number of similarly situated persons and/or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effect and expense that numerous individual actions would entail.

58. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, the Defendants will not be prejudiced or inconvenienced by the maintenance of this class action in this forum.

59. Class certification, therefore, is appropriate under Rule 23 of the Federal Rules of Civil Procedure.

WHEREFORE, the Plaintiffs respectfully pray that judgment be entered against the Defendants, Chesapeake Appalachia, LLC, Equinor USA Onshore Properties, Inc. and SWN Production Company, for compensatory and punitive damages, prejudgment and post-judgment interest, attorneys' fees and costs expended in this action, any other specific and/or general relief as may become apparent as this matter progresses and such other relief as this Court deems proper. The Plaintiffs also request that these proceedings be certified appropriate for class action treatment and that this matter proceed as such.

The Plaintiffs respectfully pray that judicial declarations be entered confirming that the subject oil and gas lease does not comply with West Virginia case law requiring that the provision for post-production costs be declared null and void.

A TRIAL BY JURY IS DEMANDED ON ALL ISSUES.

        CHARLES KELLAM and
        PHYLLIS KELLAM,
        and all other persons and
        entities similarly situated,

        Plaintiffs,

By:    /s/ *Jeremy M. McGraw*
        JAMES G. BORDAS III, #8518
        JEREMY M. MCGRAW, #10325
        BORDAS & BORDAS, PLLC
        1358 National Road
        Wheeling, WV 26003
        (304) 242-8410
        *Counsel for Plaintiffs*